ENTERED
05/18/2012

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 11-35901** |
| **JOON H. RHEE** | § | **CHAPTER 7** |
| | § | |
| **Debtor(s).** | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **SHYH-KUEN ROGER WU, *et al*** | § | |
| | § | |
| **Plaintiff(s),** | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 11-3491** |
| | § | |
| **JOON H. RHEE** | § | |
| | § | |
| **Defendant(s).** | § | |

## MEMORANDUM OPINION

Joon Rhee's Motion for Summary Judgment, (ECF No. 16), is denied.

## Factual Background[1]

When Shyh-Kuen Roger and Yeh-Peng Ester Wu decided to look for a new home, they hired Joon Rhee, a family friend and licensed real estate salesperson. Rhee was not a licensed broker and therefore needed a licensed sponsoring broker. Jaclyn Nall acted as the sponsoring broker. Rhee initially agreed to a commission of only $10,000.00. (ECF No. 10 at 3).

Rhee negotiated a $2,000,000.00 purchasing price for 1305 South Boulevard, Houston, Texas. A disagreement arose as to how the broker's commission ($60,000.00) would be split. (ECF No. 17-3; ECF No. 17-4). Rhee argued the $10,000.00 commission he initially agreed to

[1] The facts must be construed in the light most favorable to the nonmoving party. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). This fact section is taken from the background sections of the Wus' first amended complaint, (ECF No. 10), and their response to Rhee's Motion for Summary Judgment, (ECF No. 17), in addition to exhibits submitted by both parties.

was only valid under a limited set of circumstances not present. (ECF No. 17-4 at 3).[2] The Wus disagreed and attempted to hold Rhee to the initial bargain. (ECF No. 17-4 at 1). Rhee then offered to split the $60,000.00 commission evenly amongst himself, his fledgling company (Jackie Nall & Associates), and the Wus. (ECF No 17-3 at 1).[3]

There was one catch. Rhee wanted his company to be credited with the sale, listed as the selling company, and noted as receiving the entire broker's commission.[4] Rhee represented to the Wus that the deal would work as follows: Rhee's company would receive the $60,000.00 brokerage commission up front and Rhee would then cut the Wus (and presumably himself) a check for $20,000.00 at closing. (ECF No. 17 at 5). The Wus allege these were intentional fraudulent misrepresentations by Rhee (allegedly, their fiduciary), designed to induce them to go through with the purchase of the home in order for Rhee to keep the entire $60,000.00.

To keep up appearances as Rhee desired, the Settlement Agreement stated that the $60,000.00 went solely to Jackie Nall & Associates. (ECF No. 16-3 at 3). The Commission Disclosure Attachment listed both Joon Rhee and Jackie Nall & Associates as commission recipients, but not the Wus. (ECF No. 16-4 at 1).

The Wus admit signing paperwork indicating they were not to receive any commission. They allege Rhee represented that, although the language of the contract would state that Rhee's company would receive the entire commission, thereby allowing it to benefit publicly, Rhee would in fact rebate $20,000.00 of the commission to the Wus separately.

---

[2] "The deal we had originally agreed upon was made 2.5 years ago and has no relavance [sic] to this deal. It was 10k to call a guy about a property, submit an offer, and if it worked out, I handle [sic] paperwork and everything else that goes with it, and I keep 10k." (ECFNo. 17-4 at 3).

[3] Rhee also wanted a free "exotic" car rental one weekend a month for a period of six months as an additional sweetener. (ECF No. 17-3 at 1).

[4] "And, our company must get credit for the sale. As we are a fairly new company, the commission must be standard and we must collect from seller and be listed as the selling company. We're building our sales numbers. At closing, we will cut you the check for $20, I mean $20,000 dollars." (ECF No. 17-3 at 1).

The Wus never received their commission rebate. The Wus allege that Rhee had Stewart Title disburse the entire $60,000.00 to Rhee, with no funds going to them or to Jackie Nall & Associates. (ECF No. 17 at 6). In December 2010, the Wus filed suit against Rhee, Jaclyn Nall (the sponsoring broker), and Jackie Nall & Associates.

Rhee filed for bankruptcy protection in July 2011. The Wus filed this adversary proceeding in order to liquidate the debt owed by Rhee and to except the debt from discharge under § 523(a)(2)(A) or § 523(a)(4). The Wus allege the following state law causes of action: (i) breach of contract;[5] (ii) embezzlement, (ECF No. 10 at 9); (iii) failure to properly account for funds in a constructive trust, (ECF No. 10 at 10); (iv) false, misleading, and deceptive trade acts in violation of § 17.46 of the Texas Deceptive Trade Practices Act, (ECF No. 10 at 11); (v) common law fraud, (ECF No. 10 at 11); (vi) fraudulent inducement, (ECF No. 10);[6] and (vii) fraud in a real estate transaction in violation of Tex. Bus. & Comm. Code § 27.01.[7]

Rhee filed his Motion for Summary Judgment on April 4, 2012. (ECF No.16). The Wus filed their response on April 23, 2012. (ECF No. 17).

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[5] Although the Wus frequently reference Rhee's broken commitment, it is not clear the Wus contemplated a breach of contract cause of action. Rhee's Motion for Summary Judgment lists a breach of contract claim amongst the Wus' causes of action and so it will be addressed. (ECF No. 16 at 3).

[6] Fraudulent inducement is a subset of common law fraud. As it is treated differently in relevant aspects from other common law fraud claims, it will be listed separately.

[7] The Wus also lists defalcation of duty. However, it appears the Wus list defalcation of duty solely as a reason to exempt the underlying debt from discharge. (ECF No. 10 at 9) ("Rhee's debt to Mr. and Mrs. Wu is exempt from discharge because of his acts of defalcation."). This is in contrast to the allegation of embezzlement, for example. (ECF No. 10 at 9) ("Additionally, and/or alternatively, Rhee is liable to Mr. and Mrs. Wu for embezzlement, which is exempt from discharge.").

Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[8][1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of

[8] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

Rhee's Motion for Summary Judgment rests on a faulty premise. Rhee argues that none of the Wus' underlying claims are viable unless the Wus produce a signed writing which both satisfies the Statute of Frauds and indicates they are entitled to the commission rebate. (ECF No.

16 at 6). If there are no underlying causes of action then there is no debt to except from discharge. Rhee limited his motion to the sole issue of whether a signed writing exists. (ECF No. 16 at 3) ("This motion concerns only the presence or absence of a signed writing supporting the claims for compensation filed by plaintiffs which satisfies the statute of frauds.").

Rhee is mistaken. The majority of the Wus' underlying causes of action are viable despite the alleged lack of a signed writing. These viable underlying causes of action may support the Wus' § 523(a)(2)(A) or § 523(a)(4) actions to have the debt excepted from discharge.

Rhee's Motion for Summary Judgment is denied in its entirety.[9]

**Statute of Frauds**

The Texas Occupations Code states:

> A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document.

TEX. OCC. CODE § 1101.806. The Court assumes for purposes of this memorandum opinion that: (i) emails sent from Rhee's account do not constitute signed writings by Rhee; and (ii) the above statute applies to promises by a broker to rebate part of the commission to the broker's client/fiduciary. Even accepting these arguments, Rhee's Motion for Summary Judgment must be denied.

---

[9] Rhee's motion is inconsistent. The introduction states that Rhee "files this his traditional and no evidence motions for *partial summary judgment*." (ECF No 16 at 1) (emphasis added). This fits with the later statement that the motion is limited to the issue of whether a signed writing exists. The relief sought, however, is dismissal of all of the underlying causes of action (because of the lack of a signed writing). (ECF No. 16 at 6-7). Furthermore, Rhee does not break down the individual causes of action (besides "all claims" and "contractual" claims). (ECF No. 16 at 6-7). Rhee's motion for summary judgment can be summarized as: there is no signed writing therefore all the underlying causes of action fail and there's no debt to except from discharge under § 523(a)(2)(A) or § 523(a)(4). Even accepting that there's no valid signed writing, this statement is incorrect. As Rhee's motion for summary judgment is essentially comprised of this one argument, the motion must be denied in its entirety.

**Breach of Contract, Embezzlement, Constructive Trust Violation**

Rhee is likely correct that the Wus have no cause of action for breach of contract in the absence of a signed writing. The text of § 1101.806 of the Texas Occupations Code prevents such a lawsuit. It is arguable that the section only applies to lawsuits by real estate brokers. There is state law authority, however, indicating the prohibition applies to the general public as well. *See Am. Garment Prop. v. CB Richard Ellis*, 155 S.W.3d 431, 436 (Tex. App.—El Paso 2004) (rejecting such a narrow interpretation of the statute which would "impose[] a requirement upon the broker . . . but impose[] no such requirement upon the public from whom the broker is attempting to recover").

The embezzlement and the constructive trust causes of action necessarily relate to a valid breach of contract claim. Rhee could not have embezzled money that belonged to him, nor could he have misused constructive trust funds if no constructive trust exists. If the breach of contract claims fails, these causes of action fail too.

**Deceptive Trade Practices Act ("DTPA")**

Rhee provides no explanation why the lack of a signed writing prevents the Wus from prosecuting their DTPA claim.

Real estate brokers do not appear to be exempt from the DTPA. *See Morgan v. Ebby Halliday Real Estate*, 873 S.W.2d 385 (Tex. App. – Fort Worth 1993). In addition, even if real estate brokers are contemplated under the exemptions section,[10] the exemption does not apply to "an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion." TEX. BUS. COMM. CODE § 17.49(c)(1).

[10] "Nothing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, or similar professional skill." TEX. BUS. COMM. CODE § 17.49(c).

The Wus' DTPA claim is based on oral misrepresentations,[11] not a breach of contract. Like the plaintiffs in *Weitzel v. Barnes*, "[t]he oral misrepresentations . . . constitute the basis of this cause of action, so traditional contract notions do not apply." 691 S.W.2d 598, 600 (Tex. 1985). Oral misrepresentations "are not only admissible but can serve as the basis of a DTPA action." (*Id.*). The lack of a signed writing does not help Rhee escape the alleged misrepresentations.

**Common Law Fraud Claim**

The bulk of Rhee's motion rests on the Texas Supreme Court case of *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631 (Tex. 1997) and similar cases.[12] In *Trammell Crow*, the Texas Supreme Court refused to allow a broker's tort claims for tortious interference and civil conspiracy, finding them to be in essence claims to recover a commission in violation of section 20(b) of the Real Estate License Act. *Trammell*, 944 S.W.2d at 632. Section 20(b) prevented the broker for suing for breach of contract, and so the Texas Supreme Court refused to let the broker "do indirectly what the law says he cannot do directly." *Id.* at 634.

Rhee analogizes *Trammell* to the current case. Since the Wus would not be entitled to recover the commission rebate on a breach of contract theory because of the Statute of Frauds issue, then they should not be entitled to recover it under a tort theory of fraud.

There is some support for Rhee's argument. In *Haase v. Glazner*, the Texas Supreme Court held that plaintiffs may not use a fraud claim to recover benefit-of-the-bargain damages related to a contract that is unenforceable under the Statute of Frauds. 62 S.W.3d 795, 796 (Tex.

---

[11] Again, the Court is assuming for purposes of this memorandum opinion only that the emails do not constitute signed writings. Therefore, there are only oral misrepresentations to consider here.

[12] The statute referenced in *Trammell Crow* is section 20(b) of the Texas Real Estate License Act ("RELA"). Section 20(b) was essentially identical with its later replacement, § 1101.806 of the Texas Occupations Code.

2001). Plaintiffs are entitled to use a common law fraud claim to recover out-of-pocket damages, however. (*Id.*).

There are two separate contracts at issue. The first, which the Court assumes is unenforceable for purposes of this memorandum opinion only, is Rhee's agreement to rebate $20,000.00 of the commission to the Wus. The second, the contract described in the Settlement Statement and the accompanying Commission Disclosure Statement which shows the entire $60,000.00 commission going to either Rhee or Jackie Nall & Associates, is an otherwise enforceable contract.

If the first contract is unenforceable, the Wus would only be able to recover out-of-pocket damages relating to the first contract. The commission rebate constitutes benefit-of-the-bargain damages and would not be recoverable. *See also Bohnsack v. Varco, L.P.*, 668 F.3d 262, 276 (5th Cir. 2012) ("[B]enefit-of-the-bargain damages are normally not appropriate measures of damages for common law fraud claims.") (interpreting and applying Texas law).

**Fraudulent Inducement**

Fraudulent inducement claims are analyzed differently from other common law fraud claims, however.

Three years prior to *Haase*, the Texas Supreme Court issued *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998). Presidio (a contractor) received an "invitation to bid" on a project run by Formosa. *Formosa Plastics*, 960 S.W.2d at 43. In the package accompanying the invitation to bid, Formosa represented that it would take care of certain aspects of the job such as arranging the delivery of certain materials. (*Id.*). Presidio relied on these representations in making its bid. (*Id.*). Formosa's statements were

misrepresentations, and part of an intentional, premeditated scheme to defraud the contractors. The misrepresentations caused Presidio to drastically underbid. (*Id.* at 44).

The Texas Supreme Court held that when a party fraudulently procures a contract by making a promise without any intent of keeping the promise, a tort cause of action for fraud exists. "Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim . . . ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement." *Formosa*, 960 S.W.2d at 47. Presidio was allowed to collect its benefit-of-the-bargain damages in addition to its out-of-pocket damages. (*Id.* at 50).

In *Haase*, where the Texas Supreme Court prevented a plaintiff from seeking benefit-of-the-bargain damages, it was necessary to distinguish *Formosa Plastics*. The Court acknowledged that "[s]ome of our language in that opinion suggests that there is no distinction between a claim for fraud and one for fraudulent inducement." *Haase*, 62 S.W.3d at 798.

The Court clarified its analysis by stating that "[f]raudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." (*Id.*) The *Haase* Court did not overrule *Formosa Plastics*, describing it as correctly decided as to fraudulent inducement. *Haase*, 62 S.W.3d at 799. A fraudulent inducement claim requires an enforceable contract but entitles a party to benefit-of-the-bargain damages. *See also Bohnsack v. Varco, L.P.*, 668 F.3d at 275-76 ("Benefit-of-the-bargain damages are appropriate in cases of fraudulent inducement when they are satisfactorily proven.").

The Wus' situation is similar to Presidio in *Formosa Plastics*. The *Haase* Court described *Formosa Plastics* as "involv[ing] a fraudulent inducement claim based on representations contained in the bid packet upon which Presidio based its contract offer, which resulted in a written contract between the two parties." *Haase*, 62 S.W.3d at 799. Similarly, the Wus were induced to enter into an enforceable contract, relying on the other party's representations (which were not included in the final written agreement).[13]

Presidio was entitled to its benefit of the bargain damages: its profit margin plus actual costs of the work, minus what Formosa had already paid. *Formosa Plastics*, 960 S.W.2d at 50. Essentially, Presidio was entitled to reap the benefits of the contract it expected to reap had Formosa performed as it represented it would perform.

The Wus' benefit-of-the-bargain damages are equivalent to the commission rebate. Taking into account Rhee's representations, the Wus were to pay $1.98 million in total for the home ($2.0 million minus the $20,000.00 commission rebate). The Wus instead paid a total outlay of $2 million. The Wus, if they are correct, would have $20,000.00 in benefit-of-the-bargain damages.

**Fraud In a Real Estate Transaction**

The Texas Business and Commerce Code states:

> Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a . . . false promise to do an act, when the false promise is material, made with the intention of not fulfilling it, made to a person for the purpose of inducing that person to enter into a contract, and relied on by that person in entering into that contract.

TEX. BUS. COMM. CODE § 27.01(a)(2). If the Wus' allegations are correct, Rhee committed fraud in a real estate transaction.

---

[13] This is, of course, referencing the second contract listed above.

There is no argument that § 1101.806 and *Trammell Crow* prevent such a lawsuit. In *Trammell Crow*, the Texas Supreme Court prevented the plaintiff from using common law tort actions to recover a commission rebate in place of the breach of contract action barred by § 20(b), the predecessor to § 1101.806. *Trammell Crow* specifically held that § 20(b) only barred the claims if the claims were not saved by some other law. 944 S.W.2d at 634 ("[The plaintiff's] claims are barred by section 20(b) of the RELA unless saved by some other law"). Section 27.01(a)(2) provides that other law.[14]

## **Conclusion**

The Court will enter a separate order in accordance with this Memorandum Opinion.

SIGNED **May 17, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

[14] Even in the absence of this statement in *Trammell Crow*, the Wus would likely still have a valid cause of action under § 27.01(a)(2), although perhaps not for the commission rebate itself.